# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KERPER YENGLEE** | |
|                            **Plaintiff,** | **CIVIL ACTION NO. 19-5352** |
|       v. | |
| **CYNTHIA LINK, et al.,** | |
|                           **Defendants.** | |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                               **May 11, 2021**

Plaintiff Kerper Yenglee, a prisoner currently incarcerated at SCI Phoenix, brings this civil action against Correct Care Solutions and certain prison officials and medical staff employed at SCI-Phoenix and SCI-Graterford. Counsel has been appointed to represent Plaintiff and has filed an Amended Complaint. There are two groups of Defendants: (1) the Department of Corrections Defendants (the "DOC Defendants")—Superintendent Cynthia Link, Superintendent Tammy Ferguson, and Corrections Health Care Administrator Joseph Korsziniak; and (2) the Correct Care Solutions Defendants (the "CCS Defendants")—Dawn Albright, CRNP,[1] Dr. Muhammad Golsorkhi, and Stephan Kaminsky, PA-C.[2] Both groups have moved to dismiss Plaintiff's Amended Complaint. For the reasons set forth below, the Court will grant the DOC Defendants' motion and will grant in part and deny in part the CCS Defendants' motion.

---

[1] Although referred to as Dr. Albright in the Amended Complaint, Albright is a CRNP, which is a registered nurse practitioner who has advanced education and clinical training in a health care specialty area.

[2] Although referred to as Dr. Kaminsky in the Amended Complaint, Kaminsky is a PA-C, which is a certified physician assistant.

## I. BACKGROUND[3]

Yenglee is an active above-the-knee amputee who was committed to SCI-Graterford in August 2002 and had been measured for other prosthetic devices without incident during his confinement.[4] In January of 2017, Yenglee met with an outside certified prosthetic medical professional named Bowman, who was contracted by either the Department of Corrections or Correct Care Solutions.[5]

During the consultation, Yenglee was fitted for a new prosthesis without being casted.[6] Yenglee avers that casting is required to obtain exact dimensions for prosthetic devices, but that Bowman and "the Defendants" assured him that casting wasn't necessary.[7] Yenglee was issued a new prosthetic device on February 16, 2017.[8] Upon receipt of the new prosthetic device, Yenglee notified the Defendants that he was experiencing discomfort, and inquired about a lack of a waist belt or strap for support.[9] Yenglee was advised that the strap would be ordered and was told that his discomfort was likely a result of the switch in prosthetic systems and that he would be reevaluated at a follow up visit.[10]

About five days after he received the new device, Yenglee was seen by Albright at a sick call appointment for blisters, sores, and pain he was experiencing as a result of the new

---

[3] The factual allegations in Plaintiff's Amended Complaint [Doc. No. 17] are assumed true for the purposes of this motion to dismiss.

[4] *Id.* ¶ 13.

[5] *Id.* ¶ 16.

[6] *Id.* ¶ 17.

[7] *Id.* ¶ 18.

[8] *Id.* ¶ 19.

[9] *Id.*

[10] *Id.* ¶ 20.

prosthetic device.[11] Yenglee alleges that after this appointment, the Defendants denied him follow-up medical visits for many weeks.[12] At some point after that first appointment with Albright, Yenglee had a follow-up appointment with Bowman.[13] Bowman advised him that she had ordered the strap that he needed and was awaiting authorization for the purchase from an unidentified Defendant.[14] Yenglee alleges that the Defendants did not fit him with a proper prosthesis and did not provide the appropriate supportive device in order to save money.[15]

In June 2017, Yenglee met with Ms. Woods, a medical equipment/supplies employee at SCI Graterford, who provided Yenglee with one strap, despite his request for two.[16] Additionally, in June 2017, Yenglee was housed in the prison's infirmary area while he waited for his prothesis to be fixed or adjusted.[17] Yenglee alleges that he complained about the defective prosthesis, and requested a device that fit his leg.[18] His device was then altered and modified by an unidentified Defendant, but it still did not fit properly and continued to cause pain, blisters, scarring, and sores.[19] Yenglee does not allege which Defendant made the alterations to his

---

[11] *Id.* ¶ 29.

[12] *Id.* ¶ 30.

[13] *Id.* ¶ 31.

[14] *Id.*

[15] *Id.*

[16] *Id.* Attached to the Amended Complaint is an advertisement for a TES strap stating that "[t]wo belts should be provided. Belts should be changed weekly, more often if necessary." Doc. No. 17-2. Yenglee alleges this advertisement supports his argument that two straps are required.

[17] *Id.* ¶ 34.

[18] *Id.* ¶¶ 34–36.

[19] *Id.* ¶ 36.

3

prosthetic device or who determined that an alteration rather than a new prosthetic was the correct method of treatment.[20]

Yenglee states he continued to submit sick call forms in order to obtain a second strap, but because of the alleged deliberate indifference he experienced, on October 12, 2017, he had to resort to filing a grievance.[21] On October 23, 2017, Shortly after his grievance was filed, Yenglee received another consultation with Bowman. He finally received a second strap in November 2017, nine months after receiving his prosthesis.[22]

CHCA Korsniak responded to Yenglee's initial grievance, writing that Yenglee's record reflected that he was seen by medical personnel following his complaint and that the prison had ordered him a second strap.[23] In January 2018, Superintendent Link determined that Yenglee's request was moot because he had already received a second strap.[24] In his appeal to Superintendent Ferguson, who had replaced Link, Yenglee clarified that although he had received a second strap after filing his initial grievance, he was still requesting an investigation into his medical care.[25] Ferguson responded: "I have investigated your claims. Medical staff report that two straps are not required. While cleaning the strap you would have access to a wheelchair for mobility. I have also been advised that blisters and sores are an unfortunate part of wearing a prosthesis. Records indicate that you were moved to the infirmary to monitor the

---

[20] *Id.* ¶ 35.

[21] *Id.* ¶¶ 36–37.

[22] *Id.* ¶¶ 37–38.

[23] Am. Compl. Ex. A [17-1] at 1.

[24] *Id.* at Ex. C, D, E.

[25] *Id.* at Ex. F.

4

blisters and sores."[26] Yenglee then appealed to the Bureau of Health Care Services who, after a full review of his prison medical records, upheld Ferguson's response and concluded that his medical care was "reasonable and appropriate."[27]

On November 13, 2019, Yenglee initiated this action by filing a Complaint.[28] Yenglee then requested and was appointed counsel, and with the assistance of counsel, filed an amended complaint. Yenglee raises a single Eighth Amendment claim, pursuant to 42 U.S.C. § 1983, for deliberate indifference related to his medical care and seeks both monetary and injunctive relief.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[29] The question is not whether the plaintiff ultimately will prevail but whether the complaint is "sufficient to cross the federal court's threshold."[30] In evaluating a challenged complaint, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[31] However, the Court disregards

---

[26] *Id.* at Ex. H.

[27] *Id.* at Ex. J, K.

[28] Doc. No. 3.

[29] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

[30] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citations omitted).

[31] *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).

5

"threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements."[32]

### III. DISCUSSION

#### A. The DOC Defendants

Superintendent Link, Superintendent Ferguson, and CHCA Korsziniak move to dismiss the Amended Complaint because they lack personal involvement in the alleged constitutional violations. Yenglee argues that the DOC Defendants knew of his medical condition and failed to ensure he received adequate care.

Because section 1983 "liability cannot be predicated solely on the operation of *respondeat superior*," to adequately plead a claim, a plaintiff must allege that the named defendants had "personal involvement in the alleged wrongs."[33] "[P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."[34] In the present case, the DOC Defendants' participation is limited to the denial of grievances.[35]

Yenglee filed his first grievance in October of 2017—eight months after he received the new prosthetic device at issue. There are no allegations that suggest the DOC Defendants were actively involved in Yenglee's medical care before this time or directed medical professionals to deny him treatment.[36] Additionally, the Amended Complaint appears to allege that the DOC

---

[32] *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012).

[33] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).

[34] *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527, 536 (1981); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976)); *see also Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) ("A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct.").

[35] The allegations in the Amended Complaint reference the DOC Defendants by name in one numbered paragraph. Am. Compl. ¶ 22.

[36] *See Woodell v. Wenerowicz*, No. 18-1098, 2019 WL 4139264, at *16 (E.D. Pa. Aug. 20, 2019).

Defendants supplied Yenglee with the requested second strap upon the filing of the first grievance.[37]

Although it is established that reviewing a grievance does not satisfy the personal involvement requirement for § 1983 claims,[38] it is plausible to infer from this allegation that, before the filing of the grievance, the DOC Defendants were blocking the funds for a second strap, which would be sufficient involvement to state an actionable claim.

But even with this alleged involvement, Yenglee still fails to allege a deliberate indifference claim against the DOC Defendants. "[D]eliberate indifference to serious medical needs to prisoners violates the [Eighth] Amendment because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency."[39] Throughout the time period at issue, Yenglee was under the care and supervision of the medical professionals, and the grievances indicate that the DOC Defendants relied upon the prison medical personnel's recommendations and reports in relation to Yenglee's treatment.[40] As a matter of law, a prison official's denial of a prisoner's grievance can not establish deliberate indifference when the prisoner is under the care and supervision of medical professionals and the official has no knowledge that the medical staff is mistreating or not treating the prisoner.[41] The Court will

---

[37] Am. Compl. ¶¶ 37–38.

[38] *See Altenbach v. Ianuzzi*, 646 F. App'x 147, 151 (3d Cir. 2016) (per curiam) ("To the extent that [the plaintiff's] claim is based on [the nurse supervisor's] alleged failure to satisfactorily resolve his grievances, the District Court was similarly correct in dismissing it.") (citation omitted).

[39] *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (internal quotations omitted).

[40] *See* Am. Compl. Ex. A–K [Doc. No. 17-1]; *see also Id.* at Ex. H.

[41] *See Gonzalez v. De Lasalle*, 703 F. App'x 62, 66 (3d Cir. 2017) (per curiam) (affirming grant of summary judgment in favor of wardens because "as non-medical professionals, [they] were entitled to rely on and defer to the medical judgment of" plaintiff's treating physician).

dismiss these claims without prejudice permitting Plaintiff to allege more specific facts relating to the DOC Defendants' involvement in Yenglee's medical care.

## B. The CCS Defendants

Defendants Albright, Dr. Golsorkhi, and Kaminsky move to dismiss Yenglee's Amended Complaint for lack of personal involvement and for a failure to allege that they acted with deliberate indifference, and Defendant Correct Care Solutions moves to dismiss the Amended Complaint under *Monell v. New York City Department of Social Services*.[42] Yenglee argues in response that these medical professionals denied him adequate care by way of Correct Care Solution's policy or practice of not ordering prosthetic straps for inmates.

### 1. Personal Involvement by CCS Employees

The Amended Complaint states a plausible deliberate indifference claim against Dawn Albright. In order to make out a claim for deliberate indifference under the Eighth Amendment, a plaintiff must show: (1) his medical needs were serious; and (2) deliberate indifference on the part of prison officials.[43] "[A]n inadvertent failure to provide adequate medical care" does not rise to the level of deliberate indifference.[44] Nor do claims of negligence or medical malpractice.[45]

Yenglee has satisfied the first prong on his claim: his medical needs were serious. Yenglee is an amputee who has required the use of a prosthetic device for over fifteen years. His new prosthetic device caused him sores, blisters, pain, and permanent scarring and, due to these

---

[42] 436 U.S. 658, 689 (1978).

[43] *Estelle v. Gamble,* 429 U.S. 97 (1976); *Rouse v. Plantier*, 182 F.3d 192 (3d Cir. 1999).

[44] *Estelle*, 429 U.S. at 105–06.

[45] *Rouse*, 192 F.3d at 197.

serious medical issues, rendered his new prosthesis unusable for an extended period of time. Yenglee also has alleged facts that would support the second prong: deliberate indifference. The Amended Complaint alleges that Albright met with Yenglee five days after he received his new prosthetic device and that Albright was shown the "blisters, sores, pains and shown the problems with the prosthesis and the lack of straps and belts."[46] Yenglee further alleges that Albright took no action to resolve these problems. The allegations imply that from the time Yenglee received his new prosthetic device through the filing of his complaint, he was in severe pain and was not properly treated by the prison medical staff.

Furthermore, Yenglee's claim against Albright is not one for mere negligence. Rather, the Amended Complaint alleges that the prison medical staff was aware of the severe injuries being caused by the ill-fitting prosthetic device, and left him for weeks in that state. The alleged failure by Albright to provide care and respond to his complaints meets the requirements for deliberate indifference and a full factual record is required to parse out the nature of Yenglee's treatment during the time in question.[47]

As to Defendants Dr. Golsorkhi and Kaminsky, named in one factual averment in the Amended Complaint,[48] Yenglee asserts conclusory, general allegations that they knew of his

---

[46] Am. Compl. ¶ 29.

[47] *See Nicini v. Morra*, 212 F.3d 798, 815 n. 14 (3d Cir. 2000) (explaining that when officials ignore a prisoner's or detainee's obvious "need for medical care" such claims amount to deliberate indifference); *Mattern v. City of Sea Isle*, 131 F. Supp. 3d 305, 316 (D.N.J. 2015) ("[T]he Third Circuit has found deliberate indifference in situations where there was 'objective evidence that [a] plaintiff had serious need for medical care,' and prison officials ignored that evidence") (quoting *Nicini*, 212 F.3d at 815 n. 14); *Rodriguez v. Smith*, No. 03-3675, 2005 WL 1484591, at *5 (E.D. Pa. June 21, 2005) (denying motion to dismiss § 1983 claim against prison doctors who allegedly prevented plaintiff from receiving medical treatment); *Scantling v. Vaughn*, No. 03-0067, 2004 WL 306126, at *7-8 (E.D. Pa. Feb. 12, 2004) (denying motion to dismiss plaintiff's § 1983 claims against prison doctors who were alleged to have known about his pain and denied the treatment he sought).

[48] Am. Compl. ¶ 22. This averment names each Defendant and states that Yenglee complained to all of them about his condition. It does not allege any specific acts by any Defendants.

medical problems and should have or could have provided him better care and treatment, or otherwise provided improper medical treatment.[49] A "catchall" allegation, grouping the Defendants as one, fails to state a claim for relief under § 1983. Yenglee must plead "participation or actual knowledge and acquiescence . . . with appropriate particularity."[50] Claims against these Defendants will be dismissed without prejudice. The Court will grant Yenglee leave to amend in order to plead specific facts relating to Dr. Golsorkhi and Kaminsky's involvement in his medical treatment.[51]

  2. *Monell Liability*

Like municipalities, corporations that contract with prisons cannot be held vicariously liable for their employees' acts under § 1983.[52] A plaintiff seeking to hold liable under § 1983 a municipality or a private entity acting under color of state law must allege that the violation of rights was caused by a policy or custom.[53] Thus, as to Defendant Correct Care Solutions, "[t]o satisfy the pleading standard, [Yenglee] must identify a custom or policy, and specify what exactly that custom or policy was."[54]

---

[49] *Id.* ¶¶ 23, 24, 32, 35, 38, 40–45.

[50] *Rode*, 845 F.2d at 1207.

[51] In "civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). As it is possible that Plaintiff may allege sufficient facts to state a claim, amendment would not be inequitable or futile.

[52] *Natale v. Camden Cnty. Corr. Fac.*, 318 F.3d 575, 583 (3d Cir. 2003) (citing *Monell*, 436 U.S. at 691). "*Monell* applies not only to municipalities, but also extends to private organizations faced with § 1983 liability for actions under color of state law." *Kauffman v. Pa. Soc'y for the Prevention of Cruelty to Animals*, 766 F. Supp. 2d 555, 561-62 (E.D. Pa. 2011); *see also Regan v. Upper Darby Twp.*, 363 F. App'x 917, 922 (3d Cir. 2010) ("[A] city, municipality, or private entity that is a state actor may not be held vicariously liable under § 1983 for the actions of its agents because there is no respondeat superior theory of municipal liability.").

[53] *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell*, 436 U.S. at 691).

[54] *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted); *see also Thomas v. City of Phila.*, 779 F. App'x 99, 102 (3d Cir. 2019). A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." *Natale*, 318 F.3d

Yenglee asserts that Correct Care Solutions has a policy and practice of not allowing payment for the belt and straps needed for prostheses.[55] But the Amended Complaint does not allege that Albright's, or the other Defendants', deliberate indifference was a result of the implementation of this rule or policy. Therefore, these claims fail as a matter of law. The deliberate indifference claim is focused on the prison medical staff's continued neglect of Yenglee's serious medical issues and not the alleged policy of supplying one set of straps. Yenglee has alleged claims against Correct Care Solutions based solely on vicarious liability, which is not cognizable under § 1983. The Court will dismiss Yenglee's *Monell* claim against Correct Care Solutions without prejudice.

## IV. CONCLUSION

Yenglee has failed to state an actionable claim against the DOC Defendants under the Eighth Amendment and their Motion to Dismiss will be granted. However, Yenglee has stated a claim against Defendant Albright, and the CCS Defendants' Motion to Dismiss will be granted in part and denied in part with leave to amend. An order will be entered.

---

at, 584 (second alteration in original) (citations omitted). A custom is an act "that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." *Id.* (internal quotation marks and citation omitted).

[55] *See* Am. Compl. ¶ 31.